# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**WILLIE DICKERSON, JR.,**

     **Plaintiff,**

**vs.**                                    **Case No. 4:16cv113-RH/CAS**

**SERGEANT ANDREW MOCK,**
**SERGEANT COLBY MURPHY,**
**SERGEANT RONALD TADLOCK,**
**OFFICER GARRETT HENDRY,**
**and CAPTAIN ROBERT REAMS,**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Defendants filed a motion for summary judgment on January 31, 2017. ECF No. 83. The pro se Plaintiff was advised of his obligation to respond to the motion pursuant to Rule 56 and Local Rule 56.1. ECF No. 86. Plaintiff was also granted an extension of time in which to file his own motion for summary judgment, ECF Nos. 87-88, which he did on April 3, 2017. ECF No. 94. Defendants filed a response to that motion on the following day. ECF No. 95. Plaintiff filed his opposition to Defendants' summary judgment motion on May 8, 2017, ECF No. 102, which is deemed

to have been timely filed pursuant to "the mailbox rule."  Both motions are ready for a ruling and addressed in this Report and Recommendation.

## I.    Claims

Plaintiff Willie Dickerson alleged in his third amended complaint that Defendants Mock, Murphy, Henry, Tadlock, and Reams used "brutal physical force" against him "without need or provocation" in violation of his Eighth Amendment rights.  ECF No. 70 at 18.  Mr. Dickerson claimed that he was not "resisting, nor acting disruptively," and did not threaten or fight any officer in any way.  *Id.* at 18-21.  He contends the force used was "not a necessary part of prison discipline."  *Id.*  He alleges all Defendants conspired "to injure, oppress, threaten, or intimidate" him in violation of his constitutional rights.  *Id.* at 21.  As relief, he seeks a declaratory judgment, compensatory damages, and punitive damages.  *Id.* at 22-24.  All Defendants are sued in their official and individual capacities.  *Id.* at 1, 6.

## II.    Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[1] the court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, <u>Matsushita Elec.</u>

<u>Indus. Co., LTD. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  <u>Hickson Corp.</u>,

357 F.3d at 1260 (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252,

106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

<u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999), "only if

there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S.

372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in <u>Ricci v.</u>

<u>DeStefano</u>, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490

(2009)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, there is no genuine issue for trial."

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587 (internal quotation marks

omitted) (quoted in <u>Ricci</u>, 557 U.S. at 586, 129 S. Ct. at 2677).

"Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008). "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of

proof) has a heavier burden on summary judgment, the Court will consider

the Defendants' motion first.  If Defendants' motion is denied, the Court will

consider whether Plaintiff is entitled to judgment as a matter of law.

## III.    Rule 56 evidence

On July 6, 2015, Sergeant Murphy was working at Taylor

Correctional Institution and was assigned as G-Dormitory Housing Officer.

Ex. A (ECF No. 83-1 at 1, Murphy Aff.).[2]  However, he "was present in the

_____

[2] Because Mr. Dickerson is pro se and does not have access to the electronic docket, citations to the exhibits are listed first to the paper copy and then, in parenthesis, to the electronic docket.  For example, Sergeant Murphy's affidavit is Ex. A

F-3 quad of F-Dormitory" at approximately 8:40 p.m. *Id.* At that time, staff were conducting a search of Mr. Dickerson's cell and he "became disorderly by yelling in an aggressive manner, stating 'I ain't gonna take no shit from your fat cracker ass.'" Ex. G (ECF No. 83-7 at 1, 5). Sergeant Murphy attempted to counsel with him, *id.*, but ultimately he had to call for assistance over the radio because Mr. Dickerson spit into his face. Ex. A (ECF No. 83-1 at 1, Murphy Aff.). Officer Hendry and Sergeant Mock arrived and attempted to escort Mr. Dickerson to G-Dormitory Confinement for a pre-confinement assessment." *Id.*

Officer Hendry said that he and Sergeant Mock were escorting Mr. Dickerson out the front door of F-Dormitory when Mr. Dickerson "violently snatched his arms from [their] grasp and lunged at" Officer Hendry. Ex. B (ECF No. 83-2 at 1-2, Hendry Aff.). When "Sergeant Mock attempted to regain his grasp" of Mr. Dickerson, Mr. Dickerson "kicked Sergeant Mock's left leg." *Id.* at 2. Mr. Dickerson "refused all orders to cease his combative actions at which time Sergeant Mock and [Officer Hendry] used physical force to place him chest down onto the ground." *Id.*

_____

(ECF No. 83-1) and was attached to the motion for summary judgment, ECF No. 83.

Case No. 4:16cv113-RH/CAS

While on the ground, Mr. Dickerson continued to "violently" struggle against attempts by Officer Hendry and Sergeant Mock to hold him down. Ex. C (ECF No. 83-3 at 2, Mock's Aff.); *see also* Ex. B (ECF No. 83-2 at 2, Hendry Aff.). Mr. Dickerson "continued to refuse all orders to cease his actions until the spit shield[3] was effectively placed on him." *Id.* After the spit shield was put on Mr. Dickerson, he "ceased his combative actions and all force ceased." Ex. E (ECF No. 83-5 at 2, Tadlock Aff.). Sergeant Brown and Officer Wells relieved Sergeant Mock and Officer Hendry and assisted Mr. Dickerson to his feet. *Id.* They escorted Mr. Dickerson to G-Dormitory Confinement and began the "post use of force process." *Id.*

An incident report was completed on July 6, 2015, by Officer Hendry who said that "[o]nly the minimum amount of force was used in defense of staff and to overcome [Mr.] Dickerson's physical resistance to lawful commands." Ex. F (ECF No. 83-6 at 5). Likewise, Sergeant Mock also provided a similar statement. *Id.* at 3-4.

Mr. Dickerson received a post use of force physical examination, was given clean clothing, and placed in a secure cell in G-Dormitory

---

[3] Mr. Dickerson "was placed in a spit shield [to] keep [him] from spitting on any other staff members." Ex. H (ECF No. 83-8 at 6).

Confinement.  Ex. F (ECF No. 83-6 at 3).  The examination reveals a "scrape to top left side of head, laceration to right side of right eye, right upper outer eyelid" was scratched or scraped, and a bruise was visible "to left side of nose."  *Id.* at 6.  Mr. Dickerson also had scrapes on both knees. *Id.; see also* p. 7.  Mr. Dickerson's wounds were cleaned and dressed, and he was given Motrin for pain.  *Id.* at 6.

Captain Reams[4] noted in the Incident Report that Mr. Dickerson "made verbal allegations of staff abuse and provided a written statement." Ex. F (ECF No. 83-6 at 3).  The allegations of staff abuse were "forwarded to Warden Varnes for further review."  *Id.*  The Warden reviewed the report, attachments, and video and determined that the use of force was in compliance with Chapter 33-602.210.  *Id.* at 2-3.

The Office of the Inspector General from the Department of Corrections investigated Mr. Dickerson's allegations of staff abuse by Sergeant Mock and Sergeant Murphy.  Ex. F (ECF No. 83-6 at 11). Inspector Potter's "findings of fact" were consistent with the statements of

---

[4] Captain Reams "took possession of the handheld video recorder."  Ex. F (ECF No. 83-6 at 3).  There was a "momentary delay with the handheld video recorder due to a malfunction."  *Id.*  However, the recording "began as soon as the camera became functional inside the G-4 quad of confinement."  *Id.*  "The G-4 quad fixed wing cameras captured any missing video from the handheld camera."  *Id.*

Case No. 4:16cv113-RH/CAS

the officers. *Id.* at 14. Inspector Potter noted that both Sergeants Mock and Murphy declined "to pursue criminal charges" against Mr. Dickerson as they were "satisfied with Administrative sanctions." *Id.* at 15. Inspector Potter recommended the inquiry be closed and no further action taken. *Id.*

Plaintiff was issued a disciplinary report by Sergeant Murphy on July 6, 2015, for his behavior during the cell search, charging him "with rule infraction 9-17 (Disorderly Conduct)." Ex. G (ECF No. 83-7 at 1). Mr. Dickerson was found guilty of that infraction and sentenced to 30 days in disciplinary confinement. *Id.* at 1-2. He did not lose gain time. *Id.* at 2. The disciplinary log reflects that video tape[5] was reviewed as requested, but did "not provide evidence to support the inmate's statement." *Id.*

Mr. Dickerson was issued a second disciplinary report by Sergeant Murphy for spitting in his face while being escorted out of the F-Dormitory. He was charged with violating "rule Infraction 1-15 (Battery or Attempted Battery on a Correctional Officer)." Ex. H (ECF No. 83-8 at 1). The

---

[5] The log shows that the video evidence was from "fixed cameras in F Dorm." Ex. G (ECF No. 83-7 at 6, 8). Mr. Dickerson did not request any witnesses, *id.* at 7, but he did request the camera be viewed. *Id.* at 8. Mr. Dickerson said that the camera would "show that there was no spitting" and the "officer never [wiped] any spit out of his face . . . ." *Id.* at 10. A summary of the videotaped evidence states that "[t]he video also shows inmate Dickerson spiting on Sergeant C. Murphy." *Id.* at 11. Notably, the video was not submitted as summary judgment evidence.

disciplinary log reveals Mr. Dickerson was found guilty of that infraction and sentenced to 60 days in disciplinary confinement. *Id.* at 2-3. He also lost 60 days gain time. *Id.* Again, the disciplinary log reflects that the fixed camera video of F-Dormitory was reviewed, *id.* at 7 and 9, and "clearly" showed Mr. Dickerson "spiting on Sergeant C. Murphy." *Id.* at 13.

As additional evidence, Defendants submitted the affidavit of Dr. Maier who reviewed the medical records of Mr. Dickerson. Ex. I (ECF No. 83-9). Dr. Maier, who has "been a medical doctor for 50 years," said that Mr. Dickerson's medical records indicate he "sustained minor bruises, abrasions (scrapes), and a single minute laceration during an alleged use of force on July 6, 2015." *Id.* He was "comprehensively assessed and treated immediately after the alleged event." *Id.* Mr. Dickerson was also seen subsequently, on multiple occasions, "for an array of subjective complaints." *Id.* at 2. Dr. Maier declares that "[r]epeated physical examinations have found no objective signs of any injuries persisting from the event of July 6, 2015." *Id.*

Sergeant Murphy declares that the "allegations of abuse made by [Mr. Dickerson] are false." Ex. A (ECF No. 83-1 at 1, Murphy Aff.). Identical denials have also been submitted by Officer Hendry, Ex. B (ECF

No. 83-2 at 1, Hendry Aff.), Sergeant Mock, Ex. C (ECF No. 83-3 at 1, Mock Aff.), Captain Reams, Ex. D (ECF No. 83-4 at 1, Reams Aff.), and Sergeant Tadlock, Ex. E (ECF No. 83-5 at 1, Tadlock Aff.).

Mr. Dickerson submitted a lengthy affidavit in response to Defendants' motion. ECF No. 102 at 18-52. Mr. Dickerson declares that he "did not make false allegation[s] of abuse" concerning the events of July 6, 2015. ECF No. 102 at 19, ¶2. To the contrary, he contends that the Defendants' declarations are "inaccurate and untruthful." *Id.* at ¶3-¶5.

According to Mr. Dickerson's testimony, the "spit shield" was placed on him "after they beat" him, and he states that he "was never combative." *Id.* at 20, ¶6. He also disputes that Sergeant Brown and Officer Wells assisted him to his feet, asserting that "they were never at the scene of [the] incident." *Id.* He contends that Officer Hendry, Sergeant Mock, and Captain Reams escorted him into confinement. *Id.* Mr. Dickerson also avers that his report of staff abuse was not "reported" as they claimed. *Id.* at 20-21, ¶7.

As for his version of events,[6] Mr. Dickerson states that Sergeant Murphy subjected him to a "retaliatory cell search" which was designed to "harass" him in that Murphy disturbed as much of his cell as possible and did not put items back as they were found.  ECF No. 102 at 22, ¶13.  He states that at 7:30 p.m. on July 6, 2015, he was in his cell during "count." *Id.* at 25, ¶21-¶22.  Sergeant Murphy stopped at his cell and asked him what he was doing.  *Id.* at ¶22.  Mr. Dickerson said, "Nothing, just sitting up for count."  *Id.* at ¶23.  Sergeant Murphy directed him out of his cell, and then went into Mr. Dickerson's cell for about ten minutes.  *Id.* at ¶23-¶25.  After searching the cell, Sergeant Murphy questioned Mr. Dickerson about why he was in close management.  *Id.* at ¶25-¶27.  Sergeant Murphy then told Mr. Dickerson that he would look up the reason and come back and lock him up.  *Id.* at ¶27.

Sergeant Murphy went on to the second floor and Mr. Dickerson entered his cell finding it in disarray.  *Id.* at ¶28-¶29.  Mr. Dickerson came out of his cell and called up to Sergeant Murphy asking why he tore up his property.  *Id.* at ¶30.  A verbal exchange ensued with Mr. Dickerson stating

---

[6] Only statements relevant to the Eighth Amendment events at issue have been recited.

he would make a complaint and Sergeant Murphy saying he would lock up Mr. Dickerson. *Id.* at ¶31-¶32. At 8:41 p.m., Mr. Dickerson was handcuffed by Officer Hendry, who grabbed his right arm and walked him to the exit door as Mr. Dickerson was confronting Sergeant Murphy. *Id.* at ¶34-¶35. Mr. Dickerson states that Sergeants Tadlock and Mock and three other prison officials rushed into the "F-dorm vestibule" and Officer Hendry escorted him into the vestibule. *Id.* at ¶36. Sergeant Mock grabbed his right arm. *Id.* at ¶37. Mr. Dickerson said that he was "in compliance with restraints" and "never spit in" Sergeant Murphy's face. *Id.*

Mr. Dickerson states that he was "rammed into the locked exit door of F-Dorm vestibule by" Officer Hendry and Sergeant Mock, "directly driving" him forward "by his shackled arm into [the] door using" his "body to open the door by pushing" him into it. ECF No. 102 at 27-28, ¶38. Mr. Dickerson fell outside the exit, and denies that he "snatched away" from Officer Hendry and Sergeant Mock or kicked Sergeant Mock. *Id.* at 28, ¶39. He says that he was then "slammed face first to concrete" by Officer Hendry even though "he never resisted; never was combative; and never" kicked Sergeant Mock. *Id.* at ¶40. Mr. Dickerson also says he did

"not fall down on accident or [on] purpose." Officer Hendry threw him to the ground, *Id.*, and beat him. *Id.* at ¶41.

Mr. Dickerson said that Officer Hendry grabbed his head, pulling back on it while he was lying face down in handcuffs, and said, "I'm going to kill you." ECF No. 102 at 28, ¶42. Officer Hendry slammed his head face first into the concrete, splitting his head, causing abrasions and scrapes and scratches. *Id.* Mr. Dickerson contends that Officer Hendry "repeatedly slammed" his head into the concrete sidewalk even though "he never once violently struggled at all against Officer" Hendry. *Id.* at 29, ¶44.

Sergeant Mock then grabbed his head away from Officer Hendry and also slammed it repeatedly into the concrete. *Id.* at ¶45. Sergeant Mock injured his nose and skinned his face. *Id.* at ¶46-¶47. He contends that he was pinned down, face down in handcuffs, when Sergeant Mock twice "stomped his boots on" the back of his head. *Id.* at ¶48-¶49.

Mr. Dickerson was screaming for help when Sergeant Murphy hit him twice "in the head with a radio walkie talkie." ECF No. 102 at 30, ¶50-¶51. Sergeant Murphy also "stomped on his head." *Id.* at ¶52.

At some point, Officer Hendry pinned down his legs "and allowed [Sergeant] Tadlock to repeatedly kick" Mr. Dickerson who was lying face

down, with his hands handcuffed behind his back. *Id.* at ¶53. He states that three other officers (not named as Defendants) started kicking him also. ECF No. 102 at 31, ¶54. At some point, Captain Reams arrived and joined the other seven officers who were huddled around him. *Id.* at ¶56. Sergeant Mock and Officer Hendry told Mr. Dickerson to "get up," but he did not move and continued to lie in a "puddle of blood." *Id.*

Sergeant Mock and Officer Hendry lifted him up, forcing him to walk or be dragged. *Id.* at ¶57. He says that Sergeant Tadlock threw sand on his blood on the concrete, *id.* at ¶56, and looked for a way to clean his blood. *Id.* at ¶64.

Mr. Dickerson told Captain Reams that his officers tried to kill him and "bust [his] head open." *Id.* at ¶58. Captain Reams replied, "If you don't shut up, I'm going to kill you and bust your head open worser [sic] than it already is." *Id.* When Mr. Dickerson said that he was bleeding, Captain Reams then rushed toward him, grabbed his throat and began choking him while saying, "I'm going to kill you." *Id.* at ¶59. Captain Reams threw him to the ground, bringing Officer Hendry and Sergeant Mock on top of him. *Id.* at ¶60. Mr. Dickerson asserts that he "never violently struggled or resist[ed] at all." *Id.*

Case No. 4:16cv113-RH/CAS

When Sergeant Mock and Officer Hendry lifted him up again,

Sergeant Murphy put the spit shield over his "bleeding head."  ECF No. 102

at 32, ¶62-¶63.  Mr. Dickerson asserts again that he never displayed a

threatening demeanor.  *Id.* at ¶63.

Mr. Dickerson reports that Officer Hendry and Sergeant Mock

brought him into the G-quad vestibule at 8:57 p.m.  *Id.* at ¶65.  At that

point, Officer Hendry was relieved by Mr. Coyer and Sergeant Mock was

relieved by Mr. Wells, who took Mr. Dickerson into the "medical

examination room in G-Dorm confinement."  *Id.*  A nurse examined him, but

"ignored" his complaints and created false medical documents.  *Id.* at ¶67.

However, Mr. Dickerson indicates the nurse took photographs of his "nine

injuries" and he reported to the nurse that Officer Hendry and Captain

Reams threatened to kill him.  ECF No. 102 at 32-33, ¶67.  Mr. Dickerson's

affidavit indicates the nurse could not fully examine him because his head

was still covered with the shield.  *Id.* at ¶68-¶69.  Several times, Captain

Reams "told the nurse to hurry up" and was rushing the nurse.  *Id.* at ¶70,

¶74-¶75.  Mr. Dickerson contends that Captain Reams interfered with his

receiving proper medical treatment.  *Id.* at ¶76, ¶79.  Mr. Dickerson

declares that he "was never ever given any lawful orders" that he failed to

comply with and "he never made or acted in any threatening demeanor or disruptive way."  ECF No. 102 at 36, ¶89.

## IV.    Analysis

### 1.    Conspiracy Claims

Defendants first seek summary judgment on Mr. Dickerson's claim that "Defendants acted in concert or conspired to" beat him and use unnecessary force which was without justification.  ECF No. 83; *see* ECF No. 70 at 21, ¶74.  They suggest, without explicitly claiming, that the complaint lacks particularized facts of a conspiracy.  ECF No. 83 at 12.  However, Defendants correctly argue that Mr. Dickerson's conspiracy claim is barred due to the intracorporate conspiracy doctrine.  *Id.* at 13.

"[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc) (quoted in Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010)).  The doctrine provides that a "corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  McAndrew, 206 F.3d at

1036 (quoted in <u>Grider</u>, 618 F.3d at 1261).  The doctrine has been

extended beyond the world of corporations, and applies to public entities as

well.  <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1190-91 (11th Cir. 2001)

(holding that where the "only two conspirators identified" were city

employees, the intracorporate conspiracy doctrine barred plaintiffs' § 1985

conspiracy claims) (citing <u>Dickerson v. Alachua Cnty. Comm'n</u>, 200 F.3d

761, 768 (11th Cir. 2000)); *see also* <u>Rehberg v. Paulk</u>, 611 F.3d 828, 854

(11th Cir. 2010) (stating that "intracorporate conspiracy doctrine bars

conspiracy claims against corporate or government actors accused of

conspiring together within an organization").  It has also been applied to

claims alleging that "employees of the FDOC" conspired to violate an

inmate's constitutional rights "in retaliation for his filing grievances . . . ."

<u>Claudio v. Crews</u>, No. 5:13cv345-MP/EMT, 2014 WL 1758106, at *6 (N.D.

Fla. May 1, 2014) (dismissing conspiracy claim brought in § 1983 action);

*see also* <u>Briggs v. Hancock</u>, No. 3:13-CV-212-J-39MCR, 2014 WL

5378527, at *9 (M.D. Fla. Oct. 21, 2014) (same).

Here, there are no claims of involvement by persons not employed

within the Florida Department of Corrections.  Because all named

Defendants are employees of the Florida Department of Corrections, the

conspiracy claim must fail as a matter of law.  Moreover, a free-standing conspiracy claim adds nothing to the remaining Eighth Amendment claims. Put another way, dismissing a conspiracy claim does not detract from the surviving claims.  Summary judgment should be granted in favor of the Defendants on the conspiracy claim.

## 2.    Official Capacity Claims

Defendants also assert Eleventh Amendment immunity as a bar to the official capacity claims for monetary damages.  ECF No. 83 at 13-14. Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also* Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").  That "bar remains in effect when State officials are sued for damages in their official capacity."  Kentucky, 473 U.S. at 169, 105 S.Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same).

Case No. 4:16cv113-RH/CAS

Thus, a suit under § 1983 against a state official sued in his or her official capacity is barred unless it meets one of three exceptions. The first two exceptions are through a waiver of sovereign immunity. *See* Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L. Ed. 2d 171 (1985); Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986). Waiver may be either by the State or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment. Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 119 S.Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity."). In enacting § 1983, Congress did not abrogate a state's immunity, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor did Florida waive its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983. Gamble, 779 F.2d at 1520.

The third exception is through <u>Ex Parte Young</u>, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908). *See* <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court); <u>Sandoval v. Hagan</u>, 197 F.3d 484, 492 (11th Cir. 1999) (citing <u>Summit Med. Assoc. v. Pryor</u>, 180 F.3d 1326, 1336-38 (11th Cir. 1999). Here, Mr. Dickerson does not seek prospective injunctive relief. ECF No. 70 at 23-24. Rather, he sues the Defendants in their official capacities for past constitutional violations and seeks monetary damages. The Eleventh Amendment bars those claims. Summary judgment should be granted in favor of the Defendants as to the official capacity claims, leaving only individual capacity claims against the Defendants.

### 3. Physical Injury

Defendants contend that Mr. Dickerson cannot pursuant punitive or compensatory damages against the Defendants "without a prior showing of physical injury." ECF No. 83 at 14 (citing 42 U.S.C. § 1997e(a)). Defendants argue that Mr. Dickerson's injuries are only de minimus injuries. *Id.* at 16-18. However, Defendants recognize that Mr. Dickerson complained that "he had more serious injuries and the reason these

Case No. 4:16cv113-RH/CAS

serious injuries were not documented was because Defendant Reams

rushed the examination." *Id.* at 18. For his part, Mr. Dickerson declares in

his affidavit that his injuries were not properly documented and he was not

properly examined. ECF No. 102. He complained of lacerations, bruising,

pain over his whole body, and states his belief that he had a concussion

from an unnecessary and excessive use of force. *Id.* at 34-35. The fact

that Defendants argue Mr. Dickerson's subjective belief about his injuries is

contradicted by the record must be rejected in light of his testimony that the

record does not completely or accurately describe his injuries. There is a

genuine dispute of material fact concerning the extent of Mr. Dickerson's

injuries and the request to dismiss the claims for punitive and

compensatory damages should be denied.

### 4. Eighth Amendment Claims

Defendants did not seek summary judgment as to the merits of

Mr. Dickerson's Eighth Amendment claims for unnecessary and excessive

force. ECF No. 83. Mr. Dickerson, however, does seek summary

judgment in his favor on those claims. ECF No. 94. In response,

Defendants assert that the use of force was necessary because

Mr. Dickerson "refused all orders to cease his combative actions."  ECF
No. 95 at 2.

The Eighth Amendment forbids cruel and unusual punishment.
Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that prison
officials unnecessarily used excessive physical force on a prisoner falls
within the Cruel and Unusual Punishments Clause.  The core judicial
inquiry for this claim is the standard set forth in Whitley v. Albers, 475 U.S.
312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986): "whether force was applied in
a good-faith effort to maintain or restore discipline, or maliciously and
sadistically for the very purpose of causing harm."  Hudson v. McMillian,
503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (quoting
Whitley, at 320-21, 106 S.Ct. at 1085).  Analysis of an excessive force
claim considers "the need for application of force, the relationship between
that need and the amount of force used, the threat 'reasonably perceived
by the responsible officials,' and 'any efforts made to temper the severity of
a forceful response.'"  Hudson, 503 U.S. at 7; *see also* Harris v. Chapman,
97 F.3d 499, 505 (11th Cir. 1996).

An "absence of serious injury" must also be considered, but "[t]he
absence of serious injury does not necessarily preclude a claim under the

Eighth Amendment . . . ."  Stallworth v. Tyson, 578 F. App'x 948, 953 (11th

Cir. 2014).  The Supreme Court has held that the Eighth Amendment's

"prohibition of cruel and unusual punishments necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that

the use of force is not of a sort repugnant to the conscience of mankind."

Wilkins v. Gaddy, 559 U.S. 34, 37–38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d

995 (2010) (quoted in Stallworth, 578 F. App'x at 953).  Thus, the Supreme

Court has "rejected the notion that 'significant injury' is a threshold

requirement for stating an excessive force claim."  Wilkins, 559 U.S. at 37,

130 S. Ct. at 1178.  The "core judicial inquiry," is "not whether a certain

quantum of injury was sustained, but rather 'whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm.'"  559 U.S. at 37, 130 S. Ct. at 1178 (quoting

Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156

(1992)).  "'When prison officials maliciously and sadistically use force to

cause harm,' the Court recognized, 'contemporary standards of decency

always are violated . . . whether or not significant injury is evident.

Otherwise, the Eighth Amendment would permit any physical punishment,

no matter how diabolic or inhuman, inflicting less than some arbitrary

Case No. 4:16cv113-RH/CAS

quantity of injury.'" <u>Hudson</u>, 503 U.S. at 9, 112 S.Ct. 995 (quoted in

<u>Wilkins</u>, 559 U.S. at 37, 130 S. Ct. at 1178); *see also* <u>Stallworth</u>, 578 F.

App'x at 953 (stating "the focus of the Eighth Amendment inquiry is on the

nature of the force applied, rather than the extent of injury inflicted.").

    Here, there is a genuine dispute of material fact as to whether any

force used against Mr. Dickerson was to restore discipline or cause

malicious harm. If Mr. Dickerson was not refusing orders, not resisting

efforts to escort him, and not spitting, the force used, even if it did not

cause serious injury, would violate the Eighth Amendment as it "would be

'repugnant to the conscience of mankind.'" <u>Stallworth</u>, 578 F. App'x at 954.

Summary judgment cannot be granted in favor of Mr. Dickerson or

Defendants Hendry, Mock, Murphy, Tadlock, and Reams because there is

a genuine dispute of material fact.

**Recommendation**

    It is respectfully **RECOMMENDED** that Plaintiff's motion for summary

judgment, ECF No. 94, be **DENIED** based on the disputed facts presented,

that Defendants' motion for summary judgment, ECF No. 83, be

**GRANTED** in part as to the conspiracy claim and official capacity claims,

Case No. 4:16cv113-RH/CAS

but otherwise **DENIED**.  It is further **RECOMMENDED** that this case be

**REMANDED** for further proceedings prior to setting this case for trial.[7]

      **IN CHAMBERS** at Tallahassee, Florida, on August 23, 2017.


         S/     Charles A. Stampelos
         **CHARLES A. STAMPELOS**
         **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[7] Both Plaintiff and Defendants demand trial by jury.  ECF No. 70 at 24; ECF No. 72 at 5.  The Initial Scheduling Order advised the parties "that a second, brief discovery period may be provided for trial preparation for those claims which will proceed to trial, upon a showing of diligence during the initial discovery period."  ECF No. 25 at 3.  "Redundant discovery will not be permitted during a second discovery period."  *Id.*

Case No. 4:16cv113-RH/CAS